IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

WILLIAM GILBREATH                                                              PLAINTIFF

V.                              No. 4:23-CV-01016-LPR-JTK

MARTIN J. O'MALLEY, Acting Commissioner,
Social Security Administration                                              DEFENDANT


RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge Lee Rudofsky. Either party may file written objections to this Recommendation, and those objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within fourteen days of this Recommendation. If no objections are filed, Judge Rudofsky can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

I.      Introduction:

On February 10, 2022, William Gilbreath applied for Title II disability benefits, alleging disability beginning November 22, 2020. (Tr. at 11). His claim was denied initially and on reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). *Id*. With Gilbreath's permission, a telephone hearing was held on April 13, 2023. *Id*. Although informed of his right to representation, Gilbreath chose to appear without the assistance of an attorney or other representative. *Id*. On June 22, 2022, the ALJ denied

1

Gilbreath's application. (Tr. at 24). Thereafter, the Appeals Council denied review of the

decision. (Tr. at 1). The ALJ's decision stands as the final decision of the Commissioner.

Gilbreath now seeks judicial review, and for the reasons stated below, the Court

should affirm.

## II.    The ALJ's Decision:

The ALJ found Gilbreath had engaged in substantial gainful activity from

November 2020 through January 2021, but since January 2021, he had not done so for a

continuous twelve-month period. (Tr. at 13). At step two of the sequential five-step

analysis,[1] the ALJ found Gilbreath had the following severe impairments: small disc

protrusion, mild disc bulge, and mild degenerative disc disease of the cervical spine; small

central protrusion without nerve root impingement and mild levocurvature of the lumbar

spine; fibromyalgia; and migraine/tension headaches. (Tr. at 14). After finding that none

of these impairments or combination of impairments met or equaled a listed impairment,

the ALJ determined that Gilbreath would be able to perform light work with the following

limitations: (1) he could occasionally climb ladders, ropes, scaffolds, ramps, and stairs; (2)

he could occasionally stoop, kneel, crouch, and crawl; (3) he could not be exposed to bright

sunlight or noise levels greater than office level noise; (4) he could occasionally reach

---

[1]Using a five-step sequence, the ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a).

overhead bilaterally; and (5) he could not perform jobs requiring excellent hearing. (Tr. at 15).

A vocational expert ("VE") classified Gilbreath's past relevant work as a user support analyst, computer system hardware analyst, and systems programmer as sedentary but performed at a medium level. (Tr. at 63). The ALJ found that Gilbreath was able to perform his past relevant work as that work was generally performed. (Tr. at 23). Alternatively, the ALJ asked the VE about jobs existing in the national economy for an individual of Gilbreath's age, education, work experience, and residual functional capacity ("RFC"). (Tr. at 24). The VE testified that Gilbreath could perform the requirements of price marker with 136,783 jobs; router with 25,136 jobs; or deli cutter with 18,005 jobs, and the ALJ concluded that Gilbreath was not disabled. *Id*.

## III.   Discussion:

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has held that "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in Social Security Disability cases] is not high. Substantial evidence . . . is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

It is not the task of the Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the Commissioner because there is contradictory evidence in the record. The test is whether there is substantial evidence in the record as a whole to support the decision of the Commissioner. *Miller*, 784 F.3d at 477.

## B. Arguments on Appeal

Gilbreath raises four arguments on appeal: (1) that the ALJ did not fully and fairly develop the record; (2) that the ALJ erred at step two; (3) that the ALJ failed to properly evaluate Gilbreath's subjective complaints of pain and apply the *Polaski* factors; and (4) that the RFC formulated by the ALJ did not sufficiently account for Miller's limitations. As fully explained below, substantial evidence in the record supports the ALJ's decision, and no legal error has been found.

At the hearing before the ALJ, Gilbreath testified that he was thirty-six years old and unable to work due to neck and upper back problems. (Tr. at 16). His medical history—prior to the disability period—documented his medical discharge from the military. However, throughout that history, objective medical tests showed only mild deviations from normal. Gilbreath's pain had no known cause; he reported waking one day with pain that continued to progressively worsen. A June 2011 MRI showed small disc herniation and a Schmorl's node at C6-C7. (Tr. at 880). There was no evidence of stenosis, and he had good neck range of motion. He did have some pain with extension, but strength was 5/5. He was assessed with chronic neck pain and minimal MRI findings. A May 2012 EMG/nerve conduction study revealed largely normal results with "very mild" right ulnar nerve slowing with no cervical radiculopathy. (Tr. at 869–70). At a July 2012 orthopedic

examination, Gilbreath stated that he could perform his job but that he could not do physical activity. (Tr. at 883). Treatment notes stated that he was "not able to maintain any type of physical fitness" because "the jarring causes his symptoms to become more intense," and he "was not deployable." (Tr. at 982). An April 2013 lumbar MRI showed small central protrusion without nerve root impingement at L5-S1 and mild levocurvature. (Tr. at 907). A June 2017 MRI showed a small central disc protrusion at C6-C7, no significant central canal stenosis or neural foramina narrowing, and mild diffuse disc bulge at C5-C6 level. (Tr. at 430). A March 2018 cervical MRI showed a stable cervical spine and no new abnormalities. (Tr. at 515–16).

Gilbreath's medical records during the disability period demonstrate no marked changes in his condition. Treatment notes on June 8, 2021, showed Gilbreath had no "acute complaints" and that his back and neck were stable and at "baseline." (Tr. at 344). He complained of some numbness in his arms that he treated with Aleve and lidocaine patches. *Id*. Thereafter, on December 8, 2021, Gilbreath complained of intermittent muscle spasms in his back that were alleviated with muscle relaxers. (Tr. at 337). He requested a topical treatment option. *Id*. He disclaimed any numbness, tingling, weakness, or radiation. *Id*. At an appointment on December 12, 2022, Gilbreath described mild to moderate low-back pain, neck pain that radiated to his right shoulder, and numbness and pain in both hands. (Tr. at 567–68). He treated his back pain with lidocaine patches, diclofenac cream, and Tizanidine. *Id*. His low-back pain was stable, and he was to continue with medications as needed. A cervical spine x-ray showed no significant degenerative disc disease, and a nerve conduction study would be ordered. (Tr. at 569). An EMG and nerve conduction study

performed on January 11, 2023, was normal with no evidence of median neuropathy in either upper limb. (Tr. at 576).

Gilbreath first argues that the ALJ neglected to fully and fairly develop the record, especially in light of the fact that Gilbreath proceeded pro se. Specifically, he argues that the record was deficient in addressing all of his severe medically determinable impairments, that the doctors who examined him for mental and physical impairment were not properly informed of his medical history and did not do the right type of examination or testing, and that there was no inquiry at the hearing about his hearing loss, tardiness, or migraines.

The claimant has the burden to offer the evidence necessary to make a valid decision about his claim. *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006); *see also* 20 C.F.R. § 404.1512. An "ALJ is required to order medical examinations and tests only if the medical records presented to [her] do not give sufficient medical evidence to determine whether the claimant is disabled." *Martise v. Astrue*, 641 F.3d 909, 926–27 (8th Cir. 2011) (internal citations and quotations omitted). The claimant "bears a heavy burden in showing the record has been inadequately developed [and] must show both a failure to develop necessary evidence and unfairness or prejudice from that failure." *Combs v. Astrue*, 243 F. App'x 200, 204 (8th Cir. 2007); *see also Haley v. Massanari*, 258 F.3d 742, 750 (8th Cir. 2001) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial") (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). While an ALJ has a duty to develop the record, that duty "is not never-ending." *Buford v. Colvin*, 824 F.3d 793, 797 (8th Cir. 2016). The fact that Gilbreath appeared pro se does not

relieve him of the burden to establish disability. *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001)). Moreover, "the ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record." *Clark v. Shalala*, 28 F.3d 828, 830–31 (8th Cir. 1994).

The record in this case was sufficient. Although most of the medical records Gilbreath provided were military medical records predating the disability period, the ALJ also relied on more recent treatment notes from June 2021, December 2021, and December 2022, as well as the January 2023 EMG and nerve conduction study. (Tr. at 17–18). The ALJ had Gilbreath's function reports, his hearing testimony, and prior administrative medical findings. Gilbreath is incorrect that the ALJ failed to inquire about hearing loss and migraines at the hearing; both were discussed. (Tr. at 44–45, 60–61). Gilbreath also explained how his pain affected his sleep, stating that he took naps during the day. (Tr. at 51–53). The ALJ asked Gilbreath to provide additional medical records regarding his dyslexia and hearing loss following the hearing. Finally, Gilbreath had both physical and mental consultative examinations. There is no indication that the doctors who performed these examinations, one a general practitioner and the other a clinical psychologist, were incompetent or inappropriate. (Tr. at 410, 422). Gilbreath's disagreement with their ultimate conclusions is not a basis for ordering additional examinations. While the ALJ must ensure the record is fully and fairly developed, Gilbreath had the burden to prove he was disabled. In this case, the ALJ had adequate records to render a decision, and an absence of proof of disability does not equate to an insufficient record.

Gilbreath next argues that the ALJ erred at step two by failing to designate dyslexia as a severe impairment. However, prior to determining the severity of an impairment, the ALJ must first determine whether the claimant has established the existence of a "medically determinable impairment," which is an impairment that results from "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques" and "must be established by *objective medical evidence* from an acceptable medical source." 20 C.F.R. § 404.1521 (emphasis added). A claimant's statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment. *Id*. Here, the ALJ correctly found that Gilbreath had not established dyslexia as a medically determinable impairment.

Gilbreath testified at the hearing that he was diagnosed with dyslexia while taking college classes in 2017. (Tr. at 59). He stated that with accommodations for testing and coursework, he went from being a "borderline student" to doing "fairly well." (Tr. at 60). The ALJ requested records establishing that diagnosis, and Gilbreath later provided a 2017 letter from Paul Hickerson, PhD, with Invocation Counseling Services. (Tr. at 1780). The letter stated that Gilbreath presented with symptoms of a learning disorder with impairment in reading and outlined appropriate educational accommodations. *Id*. The ALJ found that,

> the claimant has alleged that he might have dyslexia but there is no indication that he has been tested. Dr. Paul Hickerson stated in September of 2017 that the claimant presented to counseling with symptoms of a specific learning disorder with impairment in reading but this is not supported by the record. While Dr. Patricia Griffen assessed the claimant with dyslexia, that diagnosis appears to be based on the claimant's statement that he was dyslexic and not based on objective testing or observation. The claimant has a college degree and his past relevant work was performed at a skilled level of 7.

(Tr. at 15).

Substantial evidence supports the ALJ's determination. Neither the letter from Hickerson nor assessment from consultative examiner Dr. Griffen reference objective medical evidence. There is no indication that Dr. Griffen did diagnostic testing, and it appears she diagnosed him based solely on his subjective statement that he had dyslexia. At most, these evaluations indicate that Gilbreath may have a learning disorder, but nothing in the record provides objective medical evidence to establish the impairment. Moreover, Gilbreath's past relevant work as a user support analyst, computer system hardware analyst, and systems programmer—all of which were performed at a skill level 7 from May 2008 until January 2021—does not support a finding of impairment. An ability to work with an impairment shows that the impairment is not disabling. *Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004). In short, given the absence of objective medical evidence or diagnostic findings, and the affirmative evidence of Gilbreath's prior relevant work, the ALJ did not err in finding that Gilbreath failed to establish dyslexia as a medically determinable impairment.

Gilbreath's third point—that the ALJ failed to consider the *Polaski* factors[2] and to provide sufficient citation to inconsistencies in the record—is equally unavailing. "[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to

---

[2]When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *See Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019); *see also* SSR 16-3p (codifying *Polaski* factors).

the claimant's complaints of pain . . . and whether the evidence so contradicts the claimant's subjective complaints that the ALJ could discount his or her testimony as not credible." *Masterson v. Barnhart*, 363 F.3d 731, 738–39 (8th Cir. 2004). An ALJ is not required to discuss each factor; it is sufficient for an ALJ to acknowledge the factors and consider them prior to discounting a claimant's subjective complaints. *Bryant v. Colvin*, 861 F.3d 779, 782 (8th Cir. 2017). Where an ALJ explicitly considers the relevant factors but then discredits a claimant's complaints *for good reason*, the decision should be upheld. *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001) (emphasis added).

The ALJ found that Gilbreath's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with the medical evidence and other evidence in the record. (Tr. at 16–17). Specifically, the ALJ found that Gilbreath's "degree of pain relief seeking behavior and treatment is not indicative of a degree of pain that would limit activities beyond the scope" of the RFC. (Tr. at 19). Moreover, Gilbreath's pain was "well controlled with prescription medications such as Tizanidine, Lidocaine patches, and diclofenac gel as well as over-the-counter medication like Aleve." *Id*. The ALJ acknowledged the intensity of Gilbreath's reported pain—four to five out of ten on a normal day and ten out of ten on a bad day. (Tr. at 19). Gilbreath stated that he could only sit for thirty minutes and would have pain in his shoulders after fifteen minutes of standing. (Tr. at 43–45). His pain worsened from the weather, car rides, lifting more than twenty pounds, sitting, and if he did too much the day before. (Tr. at 19). It was relieved from hot showers, stretching, and exercise. *Id*. While Gilbreath no longer regularly attended physical therapy, he still did at-home exercises. (Tr. at 53–54). The ALJ observed that no physician

10

had placed functional restrictions on Gilbreath's activities. (Tr. at 18). Moreover, Gilbreath participated in a wide range of daily activities—driving, taking his daughter to school, caring for pets, shopping, cooking, cleaning, and attending church. (Tr. at 242–49). Overall, the ALJ adequately articulated his reasons for not fully crediting Gilbreath's subjective complaints of pain and limitation. The ALJ considered his alleged symptoms, objective medical evidence, aggravating and precipitating factors, treatment, side effects, and his daily activities, finding the extent of his claims of disabling pain were not consistent with evidence in the record, which showed a lack of consistent ongoing treatment and a lack of consistent complaints and objective symptoms.

Finally, Gilbreath asserts that the ALJ erred in determining the RFC. Gilbreath argues that the ALJ should have included limitations related to his migraines, cervical impairment, fibromyalgia, and the effect of pain on his mental state. Gilbreath also claims that the RFC is deficient because it is not based on medical evidence from a treating or examining source.

A claimant bears the burden of establishing his RFC, which is the most she can still do despite her limitations. *Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019); 20 C.F.R. §§ 404.1545(a)(1). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, considering all impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). An ALJ must review all the relevant medical and other evidence in the case record when determining a claimant's RFC but is not required to include limitations that are not supported by the evidence in the record. *See McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003); 20 C.F.R. §§ 404.1545(a)(3). "The mere fact

that some evidence may support a conclusion opposite" to the ALJ does not allow for reversal. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). Ultimately, the RFC finding "is a decision reserved to the agency such that it is neither delegated to medical professionals nor determined exclusively based on the contents of medical records." *Norper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020).

Substantial evidence supports the RFC in this case. The medical record before the ALJ showed conservative treatment, symptom improvement with medication, and a lack of objective medical evidence. Four state agency medical consultants surmised that Gilbreath could perform the full range of light work with no additional restrictions. (Tr. at 21). Dr. Garry Stewart, who examined Gilbreath on May 2, 2022, found that Gilbreath had full range of motion in his extremities, cervical spine, and lumbar spine. (Tr. at 19). Gilbreath reported no pain, swelling, heat, or tenderness. He had no muscle spasms, weakness, or atrophy. He had a normal gait, could perform limb function tests without difficulty, had 100% bilateral grip strength, and normal reflexes. The ALJ found that Gilbreath could perform light work, but that his severe and non-severe impairments warranted additional limitations. Although Gilbreath claims these limitations were inadequate, the ALJ correctly noted that the record showed no acute distress, normal physical examinations, conservative treatment, symptom improvement with medication, no emergency care, and a lack of specialized treatment. (Tr. at 21). Gilbreath independently managed activities of daily living, including driving, preparing meals, shopping, and performing household chores. The ALJ found persuasive Dr. Griffen's opinion that Gilbreath had the capacity to interact in a socially adequate manner, to communicate intelligently and effectively, to sustain

concentration to complete tasks in acceptable time frames, and to cope with the typical

demands of basic work-like tasks. (Tr. at 20). There was no evidence that Gilbreath had

been treated for mental health complaints, took medication for a mental health concern, or

had been hospitalized for mental health care. (Tr. at 19). Gilbreath simply failed to present

sufficient proof of additional limitations outside of those the ALJ found, and substantial

evidence supports the ALJ's determination that Gilbreath could perform light work with

restrictions. Moreover, any argument that the RFC had to be based on the opinion of a

treating or examining physician is meritless. "There is no requirement than an RFC finding

be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th

2016); *see also Buford v. Colvin*, 824 F.3d 793, 797 (8th Cir. 2016) (substantial evidence

for RFC where ALJ expressly relied on medical assessments done by state agency medical

consultants).

**Conclusion**:

     For the reasons stated above, the Court finds that substantial evidence supports the

decision that Gilbreath was not disabled. Judgment should be entered in favor of the

Commissioner.

     IT IS SO ORDERED this 8th day of August 2024.

 

 

_____

UNITED STATES MAGISTRATE JUDGE